## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER TURPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Christopher Turpel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Canopy Growth Corporation ("Canopy Growth" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Canopy Growth; and (c) review of other publicly available information concerning Canopy Growth.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Canopy Growth securities between May 31, 2022 and May 10, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and consumer packaged goods ("CPG") products for recreational and medical use. The Company conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel Sports Nutrition Inc. ("BioSteel"). BioSteel is a sports nutrition and hydration brand originally formulated for professional athletes.

3.     On May 10, 2023, after the market closed, Canopy Growth announced that its audited consolidated financial statements for the fiscal year ended March 31, 2022 and the quarters ended June 30, 2022, September 30, 2022 and December 31, 2022 should no longer be relied upon, and would need to be restated. The Company also disclosed that it "identified

certain trends in the booking of sales by the [BioSteel] business unit for further review." The Company specified that "although the BioSteel Review remains ongoing, the Company has preliminarily identified material misstatements" and that "the correction of the misstatements is expected to reduce certain revenues previously recognized."

4.      On this news, Canopy Growth's stock price fell $0.18, or 14.8%, to close at $1.04 per share on May 11, 2023, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there were material weaknesses in the Company's internal controls over accounting and financial reporting; (2) that, as a result, the Company improperly booked sales of its BioSteel business unit; (3) that, as a result, the Company's revenue was overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Christopher Turpel, as set forth in the accompanying certification, incorporated by reference herein, purchased Canopy Growth securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Canopy Growth is incorporated under the laws of Canada with its principal executive offices located in Smiths Falls, Ontario. Canopy Growth's common shares trade on the Nasdaq Global Select Market under the symbol "CGC."

13.     Defendant David Klein ("Klein") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Judy Hong ("Hong") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Klein and Hong (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money

3

and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and consumer packaged goods ("CPG") products for recreational and medical use. The Company conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel. BioSteel is a sports nutrition and hydration brand originally formulated for professional athletes.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on May 31, 2022. On that day, the Company filed its Form 10-K with the SEC for the fiscal year ended March 31, 2022. Therein, the Company stated, in relevant part:[1]

> Net revenue was $520.3 million in fiscal 2022, as compared to $546.6 million in fiscal 2021. The year-over-year decrease is attributable to a revenue decline of 11% in our global cannabis segment, as declines across our organic Canadian recreational and medical cannabis businesses were only partially offset by net

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

revenue attributable to the acquisitions, in the first quarter of fiscal 2022, of Supreme Cannabis and Ace Valley. ***The revenue decline in this segment was only partially offset by growth of 9% in our other consumer products segment, which was primarily driven by the growth in our BioSteel business.***

\*       \*       \*

***Revenue from BioSteel was $44.6 million***, a year-over-year increase of $16.1 million due primarily to (i) the expansion of our United States distribution network beginning in the fourth quarter of fiscal 2021; (ii) new "ready-to-drink" product launches during the last year; and (iii) higher international sales of ready-to-drink products and beverages mixes.

18.     The 10-K also stated: "management has determined that our internal control over financial reporting as of March 31, 2022, was effective."

19.     On August 5, 2022, the Company filed its Form 10-Q with the SEC for the first quarter of fiscal year 2023, ended June 30, 2022. Therein, the Company stated, in relevant part:

Net revenue was $110.1 million in the first quarter of fiscal 2023, as compared to $136.2 million in the first quarter of fiscal 2022. The year-over-year decrease is attributable to a revenue decline of 29% in our global cannabis segment, which was primarily due to a decline in our organic Canadian recreational business and the divestiture of all of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022. Revenue in our other consumer products segment grew 1% relative to the first quarter of fiscal 2022, as growth in our BioSteel business was largely offset by declines in our Storz & Bickel and This Works businesses.

\*       \*       \*

***Revenue from BioSteel was $17.9 million in the first quarter of fiscal 2023, a year-over-year increase of $11.2 million due primarily to (i) continued growth in our distribution channels and sales velocities across North America; and (ii) higher international sales of ready-to-drink products and beverage mixes.***

20.     Also in the 1Q23 10-Q, Canopy Growth stated the following about the Company's internal controls:

There have been no changes in our "internal control over financial reporting" (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this Quarterly Report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21.     Also on August 5, 2022, the Company issued a press release with the 1Q23 10-Q, in which it listed the following highlights:

- Q1 FY2023 net revenue was flat compared to Q4 FY20221.

- Company maintained #1 share of combined premium flower and pre-rolled joint ("PRJ") segment in Q1 FY20232.

- Increased share of the combined mainstream flower and PRJ segment by 35 bps to 4.0% in Q1 FY2023.

- International medical cannabis net revenue approximately doubled versus Q1 FY2022 driven primarily by strong sales in Israel and Australia.

- ***Record BioSteel revenues in Q1 FY2023 increased 169% versus Q1 FY2022. Secured retail agreement with Walmart Stores covering 2,200 stores in 39 states. Entered partnership to become the Official Hydration Partner of the NHL and NHLPA.***

- Cost reduction program on track with operating expenses3 in Q1 FY2023 decreasing by 13% versus Q1 FY2022.

Net revenue of $110 million in Q1 FY2023 declined 19% versus Q1 FY2022. Total global cannabis net revenue of $66 million in Q1 FY2023 represented a decline of 29% over Q1 FY2022 driven in part by a decline in value flower sales in the Canadian recreational cannabis market due to a deliberate business transition to focus on higher margin, premium and mainstream products. Other consumer products revenue of $44 million in Q1 FY2023, represented an increase of 1% over Q1 FY2022. Excluding the impact from acquired businesses and divestiture of C3, net revenue declined 17% and global cannabis net revenue declined 28% versus Q1 FY2022.

22.     On November 9, 2022, Canopy Growth filed its form 10-Q with the SEC for the quarter ended September 30, 2022. Therein, the Company detailed the following about its net revenue:

Net revenue was $117.9 million in the second quarter of fiscal 2023, as compared to $131.4 million in the second quarter of fiscal 2022. The year-over-year decrease is primarily attributable to: (i) the continuing decrease in net revenue from our Canada cannabis segment, as increased competition in the Canadian recreational market has resulted in lower sales velocities, continued price compression and reduced traffic at our corporate-owned retail stores; (ii) the divestiture of all of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022; and (iii) softer performance in our This

Works business. These declines were partially offset by continued growth in our
BioSteel business resulting from the continued expansion of our distribution and
retail channels, and strong international sales growth.

*    *    *

- BioSteel

  o Revenue from BioSteel was $29.9 million in the second quarter of
     fiscal 2023, as compared to $7.5 million in the second quarter of
     fiscal 2022. The year-over-year increase is primarily attributable
     to: (i) continued growth in our distribution and retail channels,
     which resulted in increased sales velocities across North America;
     and (ii) strong international sales growth. All of BioSteel's major
     product lines contributed to the year-over-year revenue growth.

23.    Also in the 2Q23 10-Q, Canopy Growth stated the following regarding the

Company's internal control:

There have been no changes in our "internal control over financial reporting" (as
defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred
during the period covered by this Quarterly Report that have materially affected,
or are reasonably likely to materially affect, our internal control over financial
reporting.

24.    Also on November 9, 2022, the Company issued a press release announcing its

second quarter 2023 financial results, in which it listed the following highlights:

- Delivered net revenue growth of 7% in Q2 FY2023 relative to Q1
  FY2023, despite the continued impacts of macroeconomic headwinds and
  evolving Canadian cannabis market dynamics.

- ***Achieved 299% net revenue increase for BioSteel as compared to the
  prior year, driven by increased investment. Acquired manufacturing
  facility subsequent to quarter end, which is expected to support ongoing
  rapid U.S. expansion for the brand and drive gross margin
  improvement.***

*    *    *

Net revenue of $118 million in Q2 FY2023 declined 10% versus Q2 FY2022. The
decrease is primarily attributable to increased competition in the Canadian adult-
use cannabis market, the divestiture of C³ Cannabinoid Compound Company
GmbH ("C3"), and softer performance from This Works, offset by revenue
growth at BioSteel. Excluding the impact from the divestiture of C3, net revenue

7

declined 1% versus Q2 FY2022. When adjusting for both the impact of C3 and the ongoing divestiture of our Canadian retail business, revenues for the period increased 2% versus Q2 FY2022. Net revenue increased 7% in Q2 FY2023 relative to Q1 FY2023, despite the continued impacts of macroeconomic headwinds and evolving Canadian cannabis market dynamics.

25.     On February 9, 2023, Canopy Growth filed its Form 10-Q with the SEC for the quarter ended December 31, 2022. Therein, the Company stated, in relevant part:

Net revenue was $101.2 million in the third quarter of fiscal 2023, as compared to $141.0 million in the third quarter of fiscal 2022. The year-over-year decrease is primarily attributable to: (i) the continuing decrease in net revenue from our Canada cannabis segment, as increased competition in the Canadian adult-use market has resulted in lower sales velocities and continued price compression; (ii) the divestiture of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022; (iii) a decline in our U.S. CBD business, as we focused our product and brand portfolio; and (iv) softer performance in our Storz & Bickel and This Works businesses.

\*        \*        \*

- BioSteel

  o   Revenue from BioSteel was $16.4 million in the third quarter of fiscal 2023, as compared to $17.0 million in the third quarter of fiscal 2022. The year-over-year decrease is primarily attributable to timing shifts in the distribution and sales of our products into our key markets.

26.     Also on February 9, 2023, Canopy Growth issued a press release for its third quarter 2023 financial results, stating in relevant part:

Net revenue of $101 million in Q3 FY2023 declined 28% versus Q3 FY2022. The decrease is primarily attributable to increased competition in the Canadian adult-use cannabis market, the divestiture of C3 Cannabinoid Compound Company GmbH ("C³"), a decline in our U.S. CBD business, and softer performance from Storz & Bickel and This Works. When adjusting for both the impact of the divestiture of C3 and our Canadian retail business, revenues for the period decreased 23% in Q3 FY2023 versus Q3 FY2022..

27.     The above statements identified in ¶¶ 17-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there were material weaknesses in the Company's internal controls over accounting and financial reporting; (2) that, as a result, the Company improperly booked sales of its BioSteel business unit; (3) that, as a result, the Company's revenue was overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

28.     On May 10, 2023, after the market closed, Canopy Growth filed a Form 8-K with the SEC announcing that certain previously issued financial statements should no longer be relied upon because it "identified certain trends in the booking of sales by the [BioSteel] business unit for further review." In greater part, the Company stated:

> In connection with the preparation of Canopy Growth Corporation's (the "Company") consolidated financial statements for the fiscal year ended March 31, 2023, *management of the Company identified certain trends in the booking of sales by the BioSteel Sports Nutrition Inc. ("BioSteel") business unit for further review*. The Company, together with independent external counsel and forensic accountants, and under the oversight of the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Company, initiated an internal review of the financial reporting matters related to BioSteel (the "BioSteel Review").

> Although the BioSteel Review remains ongoing, *the Company has preliminarily identified material misstatements in the Prior Financial Statements (as defined below) related to sales in the BioSteel business unit that were accounted for incorrectly*. In particular, on May 4, 2023, the Company, in consultation with the Audit Committee, concluded that the Company's (i) audited consolidated financial statements for the fiscal year ended March 31, 2022, included in the Company's Annual Report on Form 10-K for the fiscal year ended March 31, 2022 (the "2022 10-K"), and (ii) unaudited consolidated financial statements for the quarterly periods ended June 30, 2022, September 30, 2022 and December 31, 2022, included in the Company's Quarterly Reports on Form 10-Q for such quarterly periods (collectively, the "Form 10-Qs" and together with the 2022 10-K, the "Prior Financial Statements"), should no longer be relied upon because of certain material misstatements contained in the Prior Financial Statements. In addition, the reports of the Company's independent registered public accounting firm included in the 2022 10-K should no longer be relied upon.

***Based on the preliminary findings of the BioSteel Review to date, the Company currently anticipates that (i) the BioSteel Review generally will focus on the timing of revenue recognition in accordance with U.S. generally accepted accounting principles under Accounting Standards Codification ("ASC") 606 and (ii) the correction of the misstatements is expected to reduce certain revenues previously recognized and adjust related balance sheet items in the Prior Financial Statements***, including certain segment disclosures. The Company is unable to quantify the impact of the BioSteel Review and the related corrections to the Prior Financial Statements at this time because the BioSteel Review is ongoing. The Company cannot provide assurance that other errors will not be identified or impact additional prior accounting periods.

The Company has determined that it is appropriate to correct the misstatements by restating the Prior Financial Statements (the "Restated Financial Statements") and plans to file the Restated Financial Statements as soon as practicable. The Company does not expect to file its Annual Report on Form 10-K for the fiscal year ended March 31, 2023 (the "2023 10-K"), until the Restated Financial Statements are completed. The Company is working diligently to complete the BioSteel Review and the Restated Financial Statements, and expects to complete them as soon as practicable. At this time, however, the Company cannot predict with certainty when the BioSteel Review or such assessment work will be completed.

As a result of the preliminary findings of the ongoing BioSteel Review, including the discovery of misstatements, the Company is continuing to assess its disclosure controls and procedures and internal control over financial reporting. The Company expects to report one or more material weaknesses in internal control over financial reporting with respect to some or all impacted periods following completion of the review.

29.     On this news, Canopy Growth's stock price fell $0.18, or 14.8%, to close at $1.04 per share on May 11, 2023, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Canopy Growth securities between May 31, 2022 and May 10, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Canopy Growth's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Canopy Growth shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Canopy Growth or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Canopy Growth; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

35.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

36.      The market for Canopy Growth's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Canopy Growth's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Canopy Growth's securities relying upon the integrity of the market price of the Company's securities and market information relating to Canopy Growth, and have been damaged thereby.

37.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Canopy Growth's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information

and/or misrepresented the truth about Canopy Growth's business, operations, and prospects as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Canopy Growth's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

39.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

40.     During the Class Period, Plaintiff and the Class purchased Canopy Growth's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

41.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Canopy Growth, their control over, and/or receipt and/or modification of Canopy Growth's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Canopy Growth, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

42.     The market for Canopy Growth's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Canopy Growth's securities traded at artificially inflated prices during the Class Period. On May 31, 2022, the Company's share price closed at a Class Period high of $4.97 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Canopy Growth's securities and market information relating to Canopy Growth, and have been damaged thereby.

43.     During the Class Period, the artificial inflation of Canopy Growth's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Canopy Growth's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of

Canopy Growth and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

44.    At all relevant times, the market for Canopy Growth's securities was an efficient market for the following reasons, among others:

(a)    Canopy Growth shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Canopy Growth filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Canopy Growth regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Canopy Growth was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

45.    As a result of the foregoing, the market for Canopy Growth's securities promptly digested current information regarding Canopy Growth from all publicly available sources and

reflected such information in Canopy Growth's share price. Under these circumstances, all purchasers of Canopy Growth's securities during the Class Period suffered similar injury through their purchase of Canopy Growth's securities at artificially inflated prices and a presumption of reliance applies.

46.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Canopy Growth who knew that the statement was false when made.

## **FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Canopy Growth's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Canopy Growth's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Canopy Growth's financial well-being and prospects, as specified herein.

52.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Canopy Growth's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Canopy Growth and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Canopy Growth's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Canopy Growth's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class

acquired Canopy Growth's securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Canopy Growth was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Canopy Growth securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.     Individual Defendants acted as controlling persons of Canopy Growth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Canopy Growth and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: May 23, 2023                           By:   *s/ Gregory B. Linkh*
                                              **GLANCY PRONGAY & MURRAY LLP**
                                              Gregory B. Linkh (GL-0477)
                                              230 Park Ave., Suite 358
                                              New York, NY 10169
                                              Telephone: (212) 682-5340
                                              Facsimile: (212) 884-0988
                                              Email: glinkh@glancylaw.com

                                              Robert V. Prongay
                                              Charles H. Linehan
                                              Pavithra Rajesh
                                              1925 Century Park East, Suite 2100
                                              Los Angeles, CA 90067
                                              Telephone: (310) 201-9150
                                              Facsimile: (310) 201-9160

                                              **THE LAW OFFICES OF FRANK R. CRUZ**
                                              Frank R. Cruz
                                              1999 Avenue of the Stars, Suite 1100
                                              Los Angeles, CA 90067
                                              Telephone: (310) 914-5007

                                              *Attorneys for Plaintiff Christopher Turpel*

**SWORN CERTIFICATION OF PLAINTIFF**

**CANOPY GROWTH CORPORATION SECURITIES LITIGATION**

I, Christopher Turpel, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the Canopy Growth Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Canopy Growth Corporation securities during the Class Period set forth in the Complaint are as follows:

     (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

5/21/2023                                              *Christopher Turpel*
_____          _____
         Date                                   Christopher Turpel

**Christopher Turpel's Transactions in Canopy Growth Corporation (CGC)**

**Common Stock**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/17/2022 | Bought* | 100 | $4.0000 |
| 7/22/2022 | Bought* | 200 | $3.5000 |
| 12/23/2022 | Bought* | 1,100 | $2.5000 |

*Assigned

**Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|------|------------------|---------------|--------------|----------|-------|
| 6/3/2022 | Sold to Open | Put | 06/17/2022 / $4 | -1 | $0.2700 |
| 6/8/2022 | Sold to Open | Put | 07/22/2022 / $3.5 | -2 | $0.3500 |
| 6/17/2022 | Assigned | Put | 06/17/2022 / $4 | 1 | $0.0000 |
| 6/21/2022 | Sold to Open | Call | 07/01/2022 / $4.5 | -2 | $0.0800 |
| 6/29/2022 | Bought to Close | Call | 07/01/2022 / $4.5 | 1 | $0.0100 |
| 7/1/2022 | Expired | Call | 07/01/2022 / $4.5 | 1 | $0.0000 |
| 7/5/2022 | Sold to Open | Call | 07/08/2022 / $5 | -1 | $0.0100 |
| 7/6/2022 | Sold to Open | Call | 07/08/2022 / $5 | -3 | $0.0200 |
| 7/8/2022 | Expired | Call | 07/08/2022 / $5 | 4 | $0.0000 |
| 7/22/2022 | Assigned | Put | 07/22/2022 / $3.5 | 2 | $0.0000 |
| 8/5/2022 | Sold to Open | Call | 08/19/2022 / $3.5 | -4 | $0.0700 |
| 8/19/2022 | Bought to Close | Call | 08/19/2022 / $3.5 | 4 | $0.3000 |
| 8/19/2022 | Sold to Open | Call | 08/26/2022 / $4.5 | -1 | $0.0800 |
| 8/25/2022 | Sold to Open | Call | 08/26/2022 / $4.5 | -3 | $0.0500 |
| 8/26/2022 | Expired | Call | 08/26/2022 / $4.5 | 4 | $0.0000 |
| 8/29/2022 | Sold to Open | Call | 09/02/2022 / $5 | -4 | $0.0500 |
| 9/2/2022 | Expired | Call | 09/02/2022 / $5 | 4 | $0.0000 |
| 9/15/2022 | Sold to Open | Call | 09/30/2022 / $4.5 | -4 | $0.0700 |
| 9/23/2022 | Bought to Close | Call | 09/30/2022 / $4.5 | 1 | $0.0100 |
| 9/26/2022 | Bought to Close | Call | 09/30/2022 / $4.5 | 3 | $0.0100 |
| 10/6/2022 | Sold to Open | Call | 10/21/2022 / $4.5 | -4 | $0.0800 |
| 10/10/2022 | Sold to Open | Put | 10/28/2022 / $2 | -1 | $0.0900 |
| 10/11/2022 | Sold to Open | Put | 10/28/2022 / $2 | -1 | $0.0900 |
| 10/11/2022 | Sold to Open | Put | 10/28/2022 / $2 | -1 | $0.0900 |
| 10/11/2022 | Sold to Open | Put | 10/28/2022 / $2 | -1 | $0.0900 |
| 10/11/2022 | Sold to Open | Put | 10/28/2022 / $2 | -1 | $0.0900 |
| 10/21/2022 | Expired | Call | 10/21/2022 / $4.5 | 4 | $0.0000 |
| 10/28/2022 | Expired | Put | 10/28/2022 / $2 | 5 | $0.0000 |
| 10/31/2022 | Sold to Open | Call | 11/04/2022 / $5 | -4 | $0.0500 |
| 11/4/2022 | Expired | Call | 11/04/2022 / $5 | 4 | $0.0000 |
| 11/8/2022 | Sold to Open | Call | 11/11/2022 / $4 | -3 | $0.0900 |
| 11/8/2022 | Sold to Open | Call | 11/11/2022 / $4 | -1 | $0.0900 |

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|---|---|---|---|---|---|
| 11/10/2022 | Bought to Close | Call | 11/11/2022 / $4 | 4 | $0.0400 |
| 11/10/2022 | Sold to Open | Call | 11/18/2022 / $4 | -1 | $0.1700 |
| 11/10/2022 | Sold to Open | Call | 11/18/2022 / $4 | -3 | $0.1700 |
| 11/16/2022 | Bought to Close | Call | 11/18/2022 / $4 | 4 | $0.1600 |
| 11/17/2022 | Sold to Open | Call | 11/25/2022 / $5 | -4 | $0.0600 |
| 11/18/2022 | Sold to Open | Put | 12/02/2022 / $3 | -6 | $0.0800 |
| 11/22/2022 | Bought to Close | Call | 11/25/2022 / $5 | 1 | $0.0100 |
| 11/22/2022 | Bought to Close | Call | 11/25/2022 / $5 | 1 | $0.0100 |
| 11/22/2022 | Bought to Close | Call | 11/25/2022 / $5 | 2 | $0.0100 |
| 11/30/2022 | Sold to Open | Call | 12/02/2022 / $4 | -1 | $0.0500 |
| 11/30/2022 | Sold to Open | Call | 12/02/2022 / $4 | -1 | $0.0500 |
| 11/30/2022 | Sold to Open | Call | 12/02/2022 / $4 | -2 | $0.0500 |
| 12/1/2022 | Bought to Close | Call | 12/02/2022 / $4 | 1 | $0.0700 |
| 12/1/2022 | Bought to Close | Call | 12/02/2022 / $4 | 1 | $0.0600 |
| 12/1/2022 | Bought to Close | Call | 12/02/2022 / $4 | 1 | $0.0600 |
| 12/1/2022 | Bought to Close | Call | 12/02/2022 / $4 | 1 | $0.0600 |
| 12/1/2022 | Sold to Open | Call | 12/09/2022 / $4.5 | -1 | $0.0900 |
| 12/1/2022 | Sold to Open | Call | 12/09/2022 / $4.5 | -1 | $0.0800 |
| 12/1/2022 | Sold to Open | Call | 12/09/2022 / $4.5 | -1 | $0.0800 |
| 12/1/2022 | Sold to Open | Call | 12/09/2022 / $4.5 | -1 | $0.0800 |
| 12/2/2022 | Expired | Put | 12/02/2022 / $3 | 6 | $0.0000 |
| 12/7/2022 | Bought to Close | Call | 12/09/2022 / $4.5 | 4 | $0.0300 |
| 12/9/2022 | Sold to Open | Put | 12/23/2022 / $2.5 | -11 | $0.1200 |
| 12/23/2022 | Assigned | Put | 12/23/2022 / $2.5 | 11 | $0.0000 |
| 1/18/2023 | Sold to Open | Call | 02/17/2023 / $3.5 | -15 | $0.0900 |
| 2/9/2023 | Bought to Close | Call | 02/17/2023 / $3.5 | 11 | $0.0100 |
| 2/9/2023 | Bought to Close | Call | 02/17/2023 / $3.5 | 4 | $0.0100 |