**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER TURPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No. 1:23-cv-04302-PAE |
| COLUMBUS ALLEN JR.,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No. 1:23-CV-05891-LTS |
| CHRISTIANN KANTNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, JUDY HONG, and MICHAEL LEE,<br><br>Defendants. | Case No. 1:23-cv-06266-LGS |

**DONALD RUSSELL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 7

I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..... 7

II. MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ..... 8

A. The PSLRA Standard For Appointing Lead Plaintiff ..... 8

B. Under the PSLRA, Movant Should be Appointed Lead Plaintiff ..... 9

1. Movant Filed a Timely Motion ..... 9

2. Movant Has the Largest Financial Interest in the Relief Sought by the Class ..... 10

3. Movant Meets Rule 23's Typicality and Adequacy Requirements ..... 11

III. MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED ..... 13

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baughman v. Pall Corp.*,
250 F.R.D. 121 (E.D.N.Y. 2008) ........ 8, 9, 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ........ 7, 11, 12

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ........ 9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ........ 8

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ........ 9, 10, 11

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ........ 7, 10, 12

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ........ 2

*Hom v. Vale, S.A.*,
No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ........ 2

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........ 7, 8

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011) ........ 12

*Levine v. AtriCure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007) ........ 8

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993) ........ 7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........ 10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ........ 12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010) ........ 11

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ....................11, 12

*Reitan v. China Mobile Games & Entm't Grp.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)....................13

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)....................10, 11

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ....................7, 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ....................14

**Statutes**

15 U.S.C. § 78u-4(a) .................... *passim*

Fed. R. Civ. P. 23(a)(4)....................12

Fed. R. Civ. P. 42(a) ....................2, 7

Anne Cullen,
More Judges Are Demanding Diversity Among Class Counsel,
Law360 (July 16, 2020) ....................16

Ralph Chapoco,
Calls for Lawyer Diversity Spread to Complex Class Litigation,
Bloomberg Law (July 30, 2020) ....................16

Donald Russell ("Movant") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of his motion for the entry of an order: (1) consolidating the above-captioned actions ("Actions");[1] (2) appointing Movant as Lead Plaintiff; and (3) approving Movant's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of those who purchased or otherwise acquired Canopy Growth Corporation ("Canopy Growth" or the "Company," together with David Klein, Judy Hong, and Michael Lee, the "Defendants") securities between June 1, 2021 and May 10, 2023, both dates inclusive (the "Class Period"),

---

[1] The following three Actions are pending before this Court: (1) *Turpel v. Canopy Growth Corp., et al.*, No. 1:23-cv-04302-PAE ("*Turpel*"), which was filed on May 23, 2023; (2) *Allen v. Canopy Growth Corp., et al.*, No. 1:23-CV-05891-LTS ("*Allen*"), which was filed on July 9, 2023; and (3) *Kantner v. Canopy Growth Corp., et al*., No. 1:23-cv-06266-LGS ("*Kantner*"), which was filed on June 21, 2023 in the U.S. District Court for the Central District of California and subsequently transferred to this Court on July 20, 2023. The *Turpel* Action is brought "on behalf of persons and entities that purchased or otherwise acquired Canopy Growth securities between May 31, 2022 and May 10, 2023, inclusive . . . . [for] claims against the Defendants under the Securities Exchange Act of 1934 . . . ." *Turpel*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Turpel* Compl."). The *Allen* Action is brought "on behalf of persons and entities that purchased or otherwise acquired Canopy Growth securities between May 31, 2022 and May 10, 2023, inclusive . . . . [for] claims against the Defendants under the Securities Exchange Act of 1934 . . . ." *Allen*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Allen* Compl."). The *Kantner* Action is brought "on behalf of persons and entities that purchased or otherwise acquired Canopy Growth securities between June 1, 2021 and May 10, 2023, inclusive . . . . pursu[ing] claims against the Defendants under the Securities Exchange Act of 1934 . . . ." *Kantner*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Kantner* Compl.").

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

which seeks to recover damages caused by Defendants' violations of the Exchange Act.[3]

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $266,325.14, Movant, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Movant also satisfies Rule 23's typicality and adequacy requirements. Movant's claims are typical of the Class's claims because he suffered losses on his Canopy Growth investment as a result of Defendants' false and misleading

---

[3] For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *3-4 (S.D.N.Y. Mar. 7, 2016) (finding use of longer class period, which began more than two years prior to the shorter class period, proper for lead plaintiff appointment purposes, and collecting cases). Accordingly, the class period in the *Kantner* Complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

statements. Further, Movant has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Movant is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Movant is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movant's motion should be granted in its entirety.

## FACTUAL BACKGROUND[4]

Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and consumer packaged goods products for recreational and medicinal use. ¶ 2. The Company is incorporated under the laws of Canada, with its principal executive offices located in Smiths Falls, Ontario. ¶ 16. Canopy Growth's common shares trade on the NASDAQ under the ticker symbol "CGC." *Id*.

The Company conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel Sports Nutrition Inc. ("BioSteel"). ¶ 2.

---

[4] This information comes from the *Kantner* Complaint, but the *Turpel* and *Allen* Complaints contains substantially similar information.

BioSteel is a subsidiary of the Company which is focused on sports nutrition and hydration. ¶ 3.

On June 1, 2021, the Company issued a press release announcing its financial results for the fourth quarter and fiscal year 2021. ¶ 24. The press release stated that BioSteel was gaining momentum in the U.S. market. *Id*. The press release also stated that the Company's revenue had increased 149% year-over-year in 2021, due to increased BioSteel sales. *Id*.

On August 6, 2021, the Company issued a press release announcing its financial results for the first quarter of fiscal year 2022. ¶ 27. The press release stated that BioSteel sales had increased 179% over the first quarter of 2021. *Id*.

On August 17, 2021, BioSteel issued a press release touting its multi-year sponsorship with the Los Angeles Lakers. ¶ 30. The press release indicated that it was the ninth sponsorship in the past year for BioSteel. *Id*. Throughout the fall of 2021, BioSteel announced other partnerships with professional athletes. ¶¶ 31-32.

On November 8, 2021, Canopy Growth filed its Form 10-Q with the SEC for the second quarter of fiscal year 2022, ended September 30, 2021 (the "2Q22 10-Q"). ¶ 34. The 2Q22 10-Q reported revenue from BioSteel of $7.5 million and attributed the growth in part to the expansion of the Company's U.S. distribution network. *Id*.

On February 9, 2022, the Company issued a press release announcing its financial results for the third quarter of fiscal year 2022. ¶ 37. The press release reported that BioSteel had had achieved record quarterly revenue, driven by expanded distribution. *Id*. The same day, the Company filed its Form 10-Q with the SEC for the third quarter of fiscal year 2022, ended December 31, 2021 (the "3Q22 10-Q"). ¶ 38. The 3Q22 10-Q reported revenues of $17 million from BioSteel. *Id*.

On May 27, 2022, the Company issued a press release announcing its financial results for the fourth quarter and fiscal year 2022. ¶ 41. The press release reported that increased distribution of BioSteel had driven year-over-year revenue growth. *Id*. The Company also announced that it would focus on investing in BioSteel in fiscal year 2023. *Id*.

On May 31, 2022, the Company filed its Form 10-K with the SEC for the fiscal year ended March 31, 2022 (the "2022 10-K"). ¶ 42. The 2022 10-K disclosed revenue from BioSteel of $44.6 million. *Id*. The 2022 10-K also stated that Company management had determined that internal controls over financial reporting were effective. ¶ 43.

On August 5, 2022, the Company issued a press release announcing its financial results for the first quarter of fiscal year 2023. ¶ 47. The press release stated that BioSteel had achieved record revenues in the first quarter of fiscal year 2023 and that the Company had secured a deal with Walmart. *Id*.

On August 9, 2022, Canopy Growth filed its Form 10-Q with the SEC for the first quarter of fiscal year 2023, ended June 30, 2022 (the "1Q23 10-Q"). ¶ 49. The 1Q23 10-Q reported no changes in the Company's internal controls over financial reporting. ¶ 50.

On November 9, 2022, the Company issued a press release announcing its financial results for the second quarter of fiscal year 2023. ¶ 56. The press release reported a 299% revenue increase for BioSteel compared with the prior year. *Id*.

The same day, Canopy Growth filed its Form 10-Q with the SEC for the quarter ended September 30, 2022 (the "2Q23 10-Q"). ¶ 57. The 2Q23 10-Q had substantially the same statements regarding the Company's internal controls. ¶ 58.

The Complaints allege that Defendants' statements were materially false and misleading and failed to disclose material adverse facts about the Company's business and operations. ¶ 62.

Specifically, Defendants failed to disclose to investors that: (i) issues with Canopy Growth's BioSteel business, including, *inter alia*, aged inventory and overspending, had been significantly hampering the Company's profitability; (ii) there were material weaknesses in the Company's internal controls over accounting and financial reporting; (iii) as a result, the Company improperly booked sales of its BioSteel business unit; (iv) as a result, the Company's revenue was overstated; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id*.

The truth began to emerge on February 9, 2023, when the Company announced its financial results for the third quarter of fiscal year 2023. ¶ 63. The press release disclosed lackluster earnings per share and a decrease in revenues. *Id*. The Company attributed this to lower gross margins in the BioSteel business. *Id*. On this news, the Company's share price fell 17.15%. ¶ 64.

The truth was fully revealed on May 10, 2023, when the Company filed a press release announcing that certain previously issued financial statements should not be relied on. ¶ 71. Specifically, the Company indicated that it had "identified certain trends in the booking of sales by the [BioSteel] business unit for further review." *Id*. On this news, the Company's share price fell 14.8%. ¶ 72.

Through the Actions, Movant seeks to recover for himself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp*., 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig*., 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc*., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig*., No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by Defendants. The Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements that artificially inflated the price of NIO securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.

Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct[]").

## II. MOVANT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)

(describing the PSLRA's process for determining the "most adequate plaintiff"); *Tronox*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

**B. Under the PSLRA, Movant Should be Appointed Lead Plaintiff**

As discussed below, Movant should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Movant holds the largest financial interest of any movant, and Movant otherwise satisfies Rule 23's typicality and adequacy requirements.

**1. Movant Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Christopher Turpel published notice of the lead plaintiff deadline via *Business Wire* on May 23, 2022. *See* Ex. A; *see Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in Business Wire sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before July 24, 2023.[5] *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movant's motion is timely filed.

[5] Given that the 60th day fell on a Saturday, July 22, 2023, Fed. R. Civ. P. 6(a)(1)(C) extends the deadline to Monday, July 24, 2023.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movant timely signed and submitted the requisite certification, identifying all of his relevant Canopy Growth trades during the Class Period, and detailing Movant's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met.

### 2. Movant Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4. Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Movant purchased 61,000 net and 67,500 total Canopy Growth shares, expended $253,594.72 in net funds and suffered losses of $266,325.14

attributable to the fraud. *See* Ex. C. Movant is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Movant Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

Movant's claims are clearly typical of the Class's claims. Movant purchased Canopy Growth securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Canopy Growth and certain of its officers under the federal securities laws. Because the factual and legal bases of Movant's claims are similar to those of the Class's claims, Movant necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011

WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in his certification, *see* Ex. B, Movant's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same). Contemporaneously with the filing of the instant motion, Movant has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Movant is currently unemployed, but previously worked at Regions

Bank as an Institutional Trust Officer. Ex. D. He has been investing for over twenty years, managing most of his investments. *Id*.

Movant has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Movant is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Movant respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III. MOVANT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movant has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Rudani v. Ideanomics,*

*Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re: Revolution Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No.

CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (where, as sole lead counsel for the class, the firm obtained final approval of $712,500 settlement); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Murphy v. Argo Blockchain plc*, No. 1:23-cv-00572-NRM-SJB (E.D.N.Y.) (appointed sole lead counsel for the class); *In re Lumen Techs., Inc. Sec. Litig.*, No. 3:23-CV-00286-TAD-KDM (W.D. La.) (appointed co-lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.) (appointed sole lead counsel for the class); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class); *In re*

*Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the

---

6 *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

7 *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: July 24, 2023

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: *<u>/s/ James M. Wilson, Jr.</u>*
James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com
rkillorin@faruqilaw.com