UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER TURPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No. 1:23-cv-04302-PAE<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHEN LI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| COLUMBUS ALLEN JR.,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, and JUDY HONG,<br><br>Defendants. | Case No. 1:23-cv-05891-LTS |
| CHRISTIANN KANTNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOPY GROWTH CORPORATION, DAVID KLEIN, JUDY HONG, and MICHAEL LEE,<br><br>Defendants. | Case No. 1:23-cv-06266-LGS |

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

ARGUMENT ..... 6

I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..... 6

II. LI SHOULD BE APPOINTED LEAD PLAINTIFF ..... 7

- A. Li Is Willing to Serve as Class Representative ..... 8
- B. Li Has the "Largest Financial Interest" in the Related Actions ..... 9
- C. Li Otherwise Satisfies the Requirements of Rule 23 ..... 10
- D. Li Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ..... 12

III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Canopy Growth Corporation et al.*,
No. 1:23-cv-05891 (S.D.N.Y.)....1

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)....10

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005)....7

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008)....6

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)....9

*Christian Kantner v. Canopy Growth Corporation et al.*,
No. 1:23-cv-06266 (S.D.N.Y.)....1

*Christian Kantner v. Canopy Growth Corporation et al.*,
No. 2:23-cv-04905 (C.D. Cal.)....1

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)....12

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011)....12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)....9

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009)....6, 7

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005)....13

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998)....9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ....................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................................10

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................................................6

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ..........................................................................................11

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ..........................................................................................13

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ......................................................9

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993)..................................................................................................6

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ..........................................................................................9

*Turpel v. Canopy Growth Corporation et al.*,
No. 1:23-cv-04302 (S.D.N.Y.)..............................................................................................1

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ............................................................... *passim*

**Rules**

Fed. R. Civ. P. 23..........................................................................................2, 7, 10, 11

Fed. R. Civ. P. 42..............................................................................................1, 2, 6

**Other Authorities**

*Manual for Complex Litigation (Third)* § 20.123 (1995). ..............................................................6

Chen Li ("Li") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) consolidating the above-captioned related actions ("Related Actions"); (2) appointing Li as Lead Plaintiff on behalf of a class (the "Class") consisting of persons and entities that purchased or otherwise acquired Canopy Growth Corporation ("Canopy Growth" or the "Company") securities between June 1, 2021 and May 10, 2023, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Canopy Growth investors, including Li, incurred significant losses following the disclosure of the Company's alleged fraud,

[1] On May 23, 2023, the first-filed of the Related Actions was filed in this Court, styled *Turpel v. Canopy Growth Corporation et al.*, No. 1:23-cv-04302 (S.D.N.Y.) ("Turpel Action"), alleging a class period including persons and entities that purchased or otherwise acquired Canopy Growth securities between May 31, 2022 and May 10, 2023, inclusive. *See* Turpel Action, Dkt. No. 1 ("Turpel Complaint") ¶ 1. On June 21, 2023, a second action alleging substantially the same wrongdoing as the Turpel Action against overlapping defendants was filed in the U.S. District Court for the Central District of California, styled *Christian Kantner v. Canopy Growth Corporation et al.*, No. 2:23-cv-04905 (C.D. Cal.), which was subsequently transferred in to this Judicial District on July 20, 2023, under the style *Christian Kantner v. Canopy Growth Corporation et al.*, No. 1:23-cv-06266 (S.D.N.Y.) ("Kantner Action"), alleging a larger class period including persons and entities that purchased or otherwise acquired Canopy Growth securities between June 1, 2021 and May 10, 2023, inclusive. *See* Kantner Action, Dkt. No. 1 ("Kantner Complaint") ¶ 1. On July 9, 2023, a third action alleging substantially the same wrongdoing as the Turpel Action and Kantner Action against overlapping defendants was filed in this Judicial District, styled *Allen v. Canopy Growth Corporation et al.*, No. 1:23-cv-05891 (S.D.N.Y.) ("Allen Action"), alleging a class period identical to that alleged in the Turpel Action. *See* Allen Action, Dkt. No. 1 ("Allen Complaint") ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the Kantner Action.

which caused Canopy Growth's share price to fall sharply, damaging Li and other Canopy Growth investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by an overlapping group of defendants arising from the substantially the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Li purchased 310,000 Canopy Growth shares, expended $975,603 on these transactions, retained 310,000 of his Canopy Growth shares, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of $761,305. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Li believes that he has the largest financial interest in the relief sought in the Related Actions. Beyond his considerable financial interest, Li also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Li has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Li respectfully requests that the Court enter an order consolidating the Related Actions, appointing him as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and consumer packaged goods products for recreational and medical use. Turpel Complaint ¶ 2; Kantner Complaint ¶ 2; Allen Complaint ¶ 2. The Company conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel Sports Nutrition Inc. ("BioSteel"). Turpel Complaint ¶ 2; Kantner Complaint ¶ 2; Allen Complaint ¶ 2.

BioSteel, a subsidiary of Canopy Growth, is a sports nutrition and hydration brand originally formulated for professional athletes. Turpel Complaint ¶ 2; Kantner Complaint ¶ 3; Allen Complaint ¶ 2. Defendants widely touted Canopy Growth's BioSteel business throughout the Class Period, including its purported "meaningful year-over-year gains in BioSteel distribution and sales velocity" and the entry of BioSteel into various partnerships and agreements with star athletes and professional sports organizations. Kantner Complaint ¶ 3.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Turpel Complaint ¶ 5; Kantner Complaint ¶ 4; Allen Complaint ¶ 5. Specifically, Defendants failed to disclose to investors that: (i) issues with Canopy Growth's BioSteel business, including, *inter alia*, aged inventory and overspending, had been significantly hampering the Company's profitability (Kantner Complaint ¶ 4); (ii) there were material weaknesses in the Company's internal controls over accounting and financial reporting (*id.*; Turpel

Complaint ¶ 5; Allen Complaint ¶ 5); (iii) as a result, the Company improperly booked sales of its BioSteel business unit (Turpel Complaint ¶ 5; Kantner Complaint ¶ 4; Allen Complaint ¶ 5); (iv) as a result, the Company's revenue was overstated (Turpel Complaint ¶ 5; Kantner Complaint ¶ 4; Allen Complaint ¶ 5); and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis (Turpel Complaint ¶ 5; Kantner Complaint ¶ 4; Allen Complaint ¶ 5).

On February 9, 2023, before the market opened, Canopy Growth announced its financial results for the third quarter of the Company's fiscal year 2023. Kantner Complaint ¶ 5. Among other results, that press release reported third quarter GAAP earnings per share of -C$0.54, missing consensus estimates by C$0.31, and revenue of C$101.2 million, representing a year-over-year decrease of 28.2% and missing consensus estimates by C$15.16 million. *Id.* The Company also disclosed new cost-reduction initiatives, including, among other things, "transitioning to an asset-light model", "the organizational restructuring of certain corporate functions," and "significantly reducing the overall size of [the Company's] organization." *Id.* In discussing the results, the Company also disclosed that "[g]ross margin in Q3 FY2023 was impacted primarily by [*inter alia*] . . . lower gross margins in the BioSteel business segment primarily attributable to the write-down of aged inventory"; that "the decrease in Sales and Marketing expenses is net of the impact of incremental investments in BioSteel, relating to the activation of the National Hockey League ('NHL') partnership announced in July 2022"; and that "a 7% decrease in [free cash] outflow versus the comparable period in FY2022 . . . [was] partially offset by investments in growth initiatives at BioSteel". *Id.*

On this news, Canopy Growth's common share price fell $0.47 per share, or 17.15%, to close at $2.27 per share on February 9, 2023. *Id.* ¶ 6.

On May 10, 2023, after the market closed, Canopy Growth announced that its audited consolidated financial statements for the fiscal year ended March 31, 2022 and the quarters ended June 30, 2022, September 30, 2022, and December 31, 2022 should no longer be relied upon, and would need to be restated. *Id.* ¶ 7; Turpel Complaint ¶ 3; Allen Complaint ¶ 3. The Company also disclosed that it "identified certain trends in the booking of sales by the [BioSteel] business unit for further review." Turpel Complaint ¶ 3; Kantner Complaint ¶ 7; Allen Complaint ¶ 3. The Company specified that "although the BioSteel Review remains ongoing, the Company has preliminarily identified material misstatements" and that "the correction of the misstatements is expected to reduce certain revenues previously recognized." Turpel Complaint ¶ 3; Kantner Complaint ¶ 7; Allen Complaint ¶ 3.

On this news, Canopy Growth's common share price fell $0.18 per share, or 14.8%, to close at $1.04 per share on May 11, 2023, on unusually heavy trading volume. Turpel Complaint ¶ 4; Kantner Complaint ¶ 8; Allen Complaint ¶ 4.

Then, on May 12, 2023, *BNN Bloomberg* published an article citing former BioSteel employees, who portrayed BioSteel as "a dysfunctional organization rife with overspending." Kantner Complaint ¶ 9. The article noted, among other issues, that BioSteel's "co-founder John Celenza [was] ousted following a testy exchange with Canopy's Chief Executive Officer David Klein"; that "[s]ources who worked for BioSteel and its partners described the working environment at the company as chaotic and, at times, disorganized"; that "BioSteel's spending plans often clashed with Canopy's need to rein in costs"; and that BioSteel staff cuts were tied to Canopy Growth's February 9, 2023 announcement regarding its transition to an asset-light model. *Id.* The article also noted that BioSteel's "sales may have come at a steep cost with costly endorsement deals awarded to a slew of NHL, NFL, MLB, and NBA players," and that "[i]ndustry

sources suggested endorsement deals with well-known athletes could start at $100,000, while contracts with professional teams could often be at least triple that amount." *Id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Li and other Class members have suffered significant losses and damages. *See* Turpel Complaint ¶ 6; Kantner Complaint ¶ 10; Allen Complaint ¶ 6.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action is brought against the Company, as well as certain officers of the Company, in connection with violations of the Exchange Act. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Canopy Growth's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II. LI SHOULD BE APPOINTED LEAD PLAINTIFF

Li should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Related Actions to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (i) the pendency of the action; and (ii) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Li satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A. Li Is Willing to Serve as Class Representative

On May 23, 2023, counsel for plaintiff in the first-filed of the Related Actions caused the statutorily required Notice of that action to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Canopy Growth, and which advised investors in Canopy Growth securities that they had 60 days from the date of the Notice's publication—*i.e.*, until July 24, 2023—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Li has filed the instant motion pursuant to the Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Li satisfies the first requirement to serve as Lead Plaintiff of the Class.

B. Li Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Li has the largest financial interest of any Canopy Growth investor or investor group seeking to serve as Lead Plaintiff. For claims arising under the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this Judicial District. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Li: (1) purchased 310,000 Canopy Growth shares; (2) expended $975,603 on his transactions in Canopy Growth securities; (3) retained 310,000 of his Canopy Growth shares; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $761,305 in connection with his Class Period transactions in Canopy Growth securities. *See* Lieberman Decl., Ex. A. To the extent that Li possesses the largest financial interest in the outcome

[2] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C. Li Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the Complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Li.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Li's claims are typical of those of the Class. Li alleges, like all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Canopy Growth. Li, like other Class members, purchased Canopy Growth securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Canopy Growth's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."

*Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Li has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Li is also represented by the Chinese law firm the Hao Law Firm in this litigation. There is no evidence of antagonism or conflict between Li's interests and those of the Class. Moreover, Li has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Li demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Li has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

### D. Li Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Li as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Li's ability and desire to fairly and adequately represent the Class has been discussed above. Li is not aware of any unique defenses Defendants could raise that would render him

inadequate to represent the Class. Accordingly, Li should be appointed Lead Plaintiff for the Class.

## III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Li has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf

of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the Related Actions, Li's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Li's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Li respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Li as Lead Plaintiff for the Class; and (3) approving Li's selection of Pomerantz as Lead Counsel for the Class.

Dated: July 24, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Chen Li and Proposed Lead Counsel for the Class*

HAO LAW FIRM
Junbo Hao
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024 Beijing
People's Republic of China

Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Chen Li*