UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CANOPY GROWTH SECURITIES LITIGATION | Case No. 1:23-cv-04302<br><br>**CLASS ACTION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ... i

TABLE OF AUTHORITIES ... iii

I. INTRODUCTION ... 1

II. STATEMENT OF FACTS ... 2

A. BioSteel's Significant Problems ... 2

B. Defendants Make False Statements Regarding Canopy's Financial Results, Internal Controls, and BioSteel's Operations ... 4

C. The Truth is Disclosed in a Series of Partial Disclosures ... 4

III. ARGUMENT ... 5

A. Plaintiffs Adequately Allege Violations of §10(b) of The Exchange Act ... 5

1. Applicable Pleading Standards Do Not Favor Dismissal ... 5

2. The Complaint Identifies Allegedly False and Misleading Statements with Particularity ... 6

a. Defendants' financial statements were false when made ... 6

b. Defendants' assurances about internal controls over financial reporting were false when made ... 7

c. Defendants' statements about BioSteel were false when made ... 9

d. Defendants' misrepresentations were material, not puffery ... 11

3. The Complaint Alleges a Strong and Cogent Inference of Scienter ... 12

a. Defendants' scienter is confirmed by confidential witnesses ... 13

b. Defendants' access to contradictory information ... 17

c. Defendants held themselves out as knowledgeable about misrepresented information ... 18

d. The scale and timing of Defendants' fraud and disclosures bolster scienter ......20

e. That the misrepresentations involved core operations bolsters scienter ......21

f. Defendants' concealing the material weaknesses with false SOX certifications bolsters scienter ......22

g. Suspicious departures bolster an inference of scienter ......23

h. Defendants fail to proffer a plausible competing inference ......23

i. Defendants' remaining scienter arguments fail ......24

4. The Complaint Adequately Alleges Violations of §20(a) of the Exchange Act ......25

CONCLUSION ......25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)....................10, 12

*Ark. Emps. Ret. Sys. v. Xerox Corp.*,
771 F. App'x 51 (2d Cir.2019) ....................9

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021)....................18

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)....................11

*Caiola v. Citibank, N.A., New York*,
295 F.3d 312 (2d Cir. 2002)....................9

*Chapman v. Mueller Water Prod. Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020)....................16

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
No. 11 Civ. 4665(PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ....................24

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)....................21

*City of Omaha Civilian Emp.'s Ret. Sys. v. CBS Corp.*,
679 F.3d 64 (2d Cir. 2012)....................21

*City of Omaha Police and Ret. Sys. v. Evoqua Water Tech Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)....................14

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................12

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)....................19

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020)....................14, 18

*Cox v. Blackberry Ltd.*,
660 F. App'x 23 (2d Cir. 2016) ....................21

*Cox v. Blackberry Ltd.*,
No. 13-CV-7060 (TPG), 2017 WL 4082306 (S.D.N.Y. Sept. 13, 2017) ....................21

*Das v. Rio Tinto PLC,*
332 F. Supp. 3d 786 (S.D.N.Y. 2018)....................8

*Dobina v. Weatherford Int'l*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)....................7

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................21

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015)....................6

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)....................6, 7

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................19, 22, 24

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018)....................14, 17

*Gauquie v. Albany Molecular Rsch., Inc.*,
No. 14CV6637FBSMG, 2016 WL 4007591 (E.D.N.Y. July 26, 2016)....................18

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................15

*Hall v. The Children's Place Retail Stores, Inc.*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008)....................7, 20

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019)....................8

*Horowitz v. Green Mountain Coffee Roasters, Inc.*,
No. 2:10-CV-227, 2013 WL 1149670 (D. Vt. Mar. 20, 2013)....................16

*In re Adient plc Sec. Litig.*,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ....................16

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)....................21

*In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*,
No. 20 CIV. 10028 (KPF), 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021)....................25

*In re Aphria, Inc. Sec. Litig.*,
No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)................10, 12, 18

*In re AppHarvest Sec. Litig.*,
No. 21-CV-7985 (LJL), 2023 WL 4866233 (S.D.N.Y. July 31, 2023).......................13, 15, 16

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004).........................................................................14

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020).........................................................................12

*In re Avon Sec. Litig.*,
No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ........................14, 22

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019).........................................................................13

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)..............................................................7, 13, 20

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
No. 07 CIV. 10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011).........................................7

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011).........................................7

*In re Complete Mgmt. Inc. Sec. Litig.*,
153 F. Supp. 2d 314 (S.D.N.Y. 2001).........................................................................20

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008).......................................................................18

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008).........................................................................15

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017).........................................................................22

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
No. 14 CIV. 0950 LAK AJP, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) .........................12

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
No. 14 Civ. 0950(LAK)(AJP), 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015).........13, 17, 21, 22

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
No. 14 CIV. 0950 LAK AJP, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015)...........................12

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012)....................24

*In re ForceField Energy Inc. Sec. Litig.*,
No. 15 CIV. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017)....................14

*In re Grab Holdings Ltd. Sec. Litig.*,
No. 1:22-CV-02189 (JLR), 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024)....................10

*In re Grupo Televisa Sec. Litig.*,
368 F. Supp. 3d 711 (S.D.N.Y. 2019)....................7

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
No. 216CV04581JSLGD, 2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022)....................8, 24

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
No. 16-CV-4581 (JS)(LGD), 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023)....................8

*In re Henry Schein, Inc. Sec. Litig.*,
No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019)....................12

*In re Iconix Brand Grp., Inc.*,
No. 15 CIV. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)....................21, 24

*In re Insys Therapeutics, Inc. Sec. Litig.*,
No. 17 CIV. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018)....................7, 20

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017)....................9

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
859 F. Supp. 2d 572 (S.D.N.Y. 2012)....................10

*In re Mercator Software, Inc.*,
161 F. Supp. 2d 143 (D.Conn.2001)....................23

*In re MF Global Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013)....................7

*In re Nokia Corp. Sec. Litig.*,
423 F. Supp. 2d 364 (S.D.N.Y. 2006)....................19

*In re Pall Corp.*,
No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009)....................22

*In re Pareteum Sec. Litig.*,
No. 19 CIV. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)....................20

*In re Plug Power, Inc. Sec. Litig.*,
No. 21 CIV. 2004 (ER), 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ................................24

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. Oct. 24, 2017)..........................................................................21

*In re Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)..............................20

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)..........................................................................................................17

*In re Scot. Re Grp. Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007)........................................................................................23

*In re Supercom Inc. Sec. Litig.*,
No. 15 CIV. 9650 (PGG), 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ...............................22

*In re Symbol Techs., Inc. Sec. Litig.*,
No. 05-CV-3923 DRH AKT, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) .....................17, 22

*In re Synchronoss Techs., Inc. Sec. Litig.*,
No. CV172978FLWLHG, 2019 WL 2849933 (D.N.J. July 2, 2019).....................................18

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
No. 13 CIV. 8846 LGS, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014)...........................21, 22

*In re Vale S.A. Sec. Litig.*,
No. 19CV526RJDSJB, 2020 WL 2610979 (E.D.N.Y. May 20, 2020) ............6, 10, 11, 12, 18

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y.2006) ................................................................................................20

*In re Wells Fargo & Co. Sec. Litig.*,
No. 1:20-CV-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)...........................25

*Int'l Ass'n of Heat v. IBM*,
205 F. Supp. 3d 527 (S.D.N.Y. 2016)........................................................................................23

*Katz v. Image Innovations Holdings, Inc.*,
542 F. Supp. 2d 269 (S.D.N.Y. 2008)........................................................................................20

*Lematta v. Casper Sleep, Inc.*,
No. 20-CV-2744 (MKB), 2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022)..............................15

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010)........................................................................................16

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
430 F. App'x 63 (2d Cir. 2011) ....................16

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)....................15

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007)....................18, 23

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
518 F. Supp. 3d 772 (S.D.N.Y. 2021)....................16

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................5

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)....................9

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ....................22

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) ....................14, 15, 16, 19, 21

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)....................13

*Nutriband, Inc. v. Kalmar,*
19-CV-2511NGGSJB, 2020 WL 4059657 (E.D.N.Y. July 20, 2020)....................5, 10

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)....................20

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018)....................9

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)....................8

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
432 F. Supp. 3d 131 (D. Conn. 2019)....................19

*Oxford Health Plans, Inc. Sec. Litig.*,
51 F. Supp. 2d 290 (S.D.N.Y.1999)....................20, 21

*Pearlstein v. Blackberry Ltd.*,
93 F. Supp. 3d 233 (S.D.N.Y. 2015)....................21

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
No. 1:16-CV-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ................7, 8, 10, 22

*Reilly v. U.S. Physical Therapy, Inc.*,
No. 17 CIV. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018) ..............................23

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019).........................................................................8, 9, 16, 21

*S.E.C. v. Espuelas*,
908 F. Supp. 2d 402 (S.D.N.Y. 2012)..........................................................................................7

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
348 F. Supp. 3d 313 (S.D.N.Y. 2018)........................................................................................18

*Shemian v. Rsch. In Motion Ltd.*,
No. 11 CIV. 4068 RJS, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013).............................12, 22

*Shemian v. Rsch. In Motion Ltd.*,
570 F. App'x 32 (2d Cir. 2014) .................................................................................................12

*Solomon v. Sprint Corp.*,
No. 1:19-CV-05272 (MKV), 2022 WL 889897 (S.D.N.Y. Mar. 25, 2022).............................7

*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
No. 21-2698-CV, 2022 WL 17587853 (2d Cir. Dec. 13, 2022).............................................12

*Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*,
No. 22-CV-8228 (JSR), 2023 WL 8287681 (S.D.N.Y. Nov. 30, 2023).................................15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...........................................................................................................5, 13

*Thomas v. Shiloh Indus., Inc.*,
No. 15-cv-07449-KMW, 2018 WL 4500867 (S.D.N.Y. Sept. 19, 2018)...............................21

*Van Dongen v. CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013)........................................................................................23

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009).....................................................................................7, 21

*Venkataraman v. Kandi Techs. Grp., Inc.*,
No. 20 CIV. 8082 (LGS), 2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022)..........................7, 24

*Wang v. Cloopen Grp. Holding Ltd.*,
661 F. Supp. 3d 208 (S.D.N.Y. 2023)........................................................................................18

*Woolgar v. Kingstone Companies, Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020)....................21, 23

*Yannes v. SCWorx Corp.*,
No. 20-CV-03349 (JGK), 2021 WL 2555437 (S.D.N.Y. June 21, 2021) ....................24

**Rules & Regulations**

Fed. R. Civ. P. 9(b) ....................6, 17

Fed. R. Civ. P. 12(b)(6)....................5

**Statutes**

Private Securities Litigation Reform Act of 1995 ....................6, 17, 22

Section 10(b) of the Securities Exchange Act of 1934 ....................5, 25

Lead Plaintiff Chen Li ("Lead Plaintiff") and additional named plaintiffs Christiann Kantner and Thinh Nguyen (collectively, "Plaintiffs"), respectfully submit this memorandum in opposition to the motion to dismiss the Complaint[1] filed by defendants Canopy Growth Corporation ("Canopy" or the "Company"), David Klein ("Klein"), Judy Hong ("Hong"), and Michael Lee ("Lee") (collectively, "Defendants").

## I. INTRODUCTION

This is a straightforward case of securities fraud by a company and its executives who were not honest with investors about known problems with the Company's primary subsidiary or the impacts those problems had on Canopy's financial reporting. Instead, Defendants concealed that: (i) Canopy's internal controls were defective; (ii) Canopy reported inflated and false financial results to investors throughout the Class Period; (iii) Canopy's subsidiary, BioSteel, lacked enforceable distribution contracts with many key distributors; and (iv) BioSteel was experiencing a massive problem with aged inventory. The Complaint pleads in detail each of the misrepresentations, including what was said, when, where, and by whom; and why Plaintiffs contend each was false. ¶¶78–150.

Defendants' motion shows no pleading deficiency. Focusing mostly on scienter, Defendants' arguments miss the mark. As the Complaint readily shows, Defendants were at least reckless in misrepresenting crucial facts to investors. The Complaint outlines how information contradicting and undermining Defendants' public statements was not only available to Defendants, but was delivered to them at the beginning of the Class Period. This alone establishes scienter. And, the Complaint contains extensive additional scienter allegations, including

[1] All "¶__" references are to the First Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF No. 56). All "DM" references refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF No. 63).

Defendants' own professions of knowledge, the magnitude and temporal proximity of the restatement, Canopy's rampant internal controls deficiencies and GAAP violations, the importance of BioSteel to Canopy, and suspicious executive resignations – all of which support a strong inference of scienter. Indeed, the scale and scope of Defendants' deception make any competing inference implausible.

Almost an afterthought, Defendants' limited falsity arguments also fail. Defendants concede, as they must, the falsity of many misrepresentations, but incorrectly attempt to redefine others as puffery or unactionable as opinion. Defendants are wrong. The statements address *actual past performance*, not mere aspirations. And, Defendants admitted when restating that there was in fact a nexus between the omitted information and the falsified financial statements. ¶¶154–56. Further, as outlined in the Complaint, the omitted information was known but undisclosed to investors. ¶¶24–77. Therefore, Defendants' motion to dismiss should be denied in its entirety, and the parties should be directed to commence discovery without further delay.

## II. STATEMENT OF FACTS

### A. BioSteel's Significant Problems

In 2019, Canopy purchased a majority stake in sports drink company BioSteel, which grew to over 90%. ¶¶14–16, 18. Through the Class Period, while the rest of Canopy's business faltered, BioSteel was a crucial driver of revenue, as recognized by Defendants themselves and analysts. ¶¶19–23, 100, 126, 139, 162, 180.

Unbeknownst to investors, BioSteel's highly touted results were compromised by several internally known problems, including material weaknesses in internal controls over financial reporting, a mounting problem with aged and soon-to-expire inventory, and a lack of enforceable contracts with key distributors, all of which exacerbated the potential for revenue inflation. ¶24.

Multiple Canopy employees confirmed that, since at least 2021, BioSteel accumulated significant excess inventory that retailers did not accept, directly contradicting public claims that BioSteel was "seeing good retailer response." ¶¶34–45. This was especially problematic for BioSteel because its large customers only accepted inventory with at least 75% of its shelf-life remaining. ¶40. The problem became so bad that BioSteel began offering ***free cases and even truckloads of its product*** to employees. ¶¶40, 43. These related-party giveaways were not disclosed to investors. BioSteel's inventory problem was directly raised to Canopy management, but was neither resolved nor disclosed. ¶44.

Canopy employees further confirmed that BioSteel did not have enforceable contracts in place with some of its wholesale partners, which prevented BioSteel from selling the substantial excess inventory through wholesale channels, thus exacerbating BioSteel's inventory problem. ¶¶25–27. Canopy tried to remediate its inventory issue by dumping its product in Europe, but distribution issues and unenforceable contracts scuttled this attempt. ¶¶28–33.

In addition to known but concealed operational problems at Canopy's BioSteel unit, Canopy concealed material weaknesses in its internal controls over financial reporting. ¶48. Despite Defendants' factual representations throughout the Class Period that they "prepare and report [Canopy's] Financial Statements in accordance with U.S. GAAP" and that its internal controls were effective, Canopy in fact improperly recognized revenue in violation of U.S. GAAP, including where: (i) the product ordered had not been shipped, and therefore control of the product had not been transferred to the customer; (ii) the product was shipped without a legally enforceable contract with the customer; and (iii) the product was shipped but not accepted because it was too aged. ¶¶48–74, 154–55.

### B. Defendants Make False Statements Regarding Canopy's Financial Results, Internal Controls, and BioSteel's Operations

Between 2021 and 2023, Canopy inflated reported financial results for its BioSteel division by over C$26.6 million, and touted the progress of that division as central to its success. ¶¶78, 83, 86, 90, 92, 95, 101–02, 104, 108, 110, 112, 114–15, 117, 120, 122, 124, 127–28, 130, 133, 135, 137, 144, 146, 149. Further, despite knowing of serious problems within BioSteel including distribution issues, a lack of enforceable contracts, and an ever-accumulating unsellable and aged inventory, Defendants continued to portray BioSteel as an unmitigated success. ¶¶80–81, 97, 102, 110, 112, 115, 117, 122, 124, 128, 130, 135, 137, 144, 146.

Moreover, Defendants continually reassured investors that the Company's internal controls were "effective," despite numerous material weaknesses. ¶¶65, 85–86, 94–95, 106–08, 119–20, 132–33, 148–49. Consequently, investors were given a false impression of Canopy's financial results and the health of its most important subsidiary, BioSteel.

### C. The Truth is Disclosed in a Series of Partial Disclosures

By February 9, 2023, Defendants could no longer hide at least some of the issues at BioSteel. On that date, before the market opened, Canopy announced its financial results for the third quarter of fiscal year 2023, ended December 31, 2022, in a Form 8-K. ¶140. Most notably, the Company admitted that "[g]ross margin in Q3 FY2023 was impacted primarily by [*inter alia*] … ***lower gross margins in the BioSteel business segment primarily attributable to the write-down of aged inventory***[.]" ¶141. Investors swiftly reacted to this partial disclosure, sending Canopy's stock price down $4.70 per share, or 17.15%, on February 9, 2023. ¶142. To stem a further fall, the Company omitted the full scope of its problems with BioSteel. ¶¶143–50.

On May 10, 2023, Canopy filed a Form 8-K with the SEC conceding that the same financial statements it had touted to investors as evidence of BioSteel's success were unreliable because it

"identified certain trends in the booking of sales by the [BioSteel] business unit for further review." ¶151. The Company confessed it likely had "one or more material weaknesses in internal controls over financial reporting." *Id*. On this news, Canopy's stock price fell $2.56 per share, or 20.31%, on unusually heavy trading volume. ¶152. Finally, on June 22, 2023, the Company filed its Form 10-K for the fiscal year 2023 which detailed the full scope of Canopy's falsification of financial reports and material weaknesses in internal controls. ¶¶154–56. The 2023 Form 10-K explicitly linked the weaknesses to BioSteel's inventory and distribution issues. ¶¶154–55. As a result of this final disclosure, Canopy shares declined $1.01 per share. ¶157.

## III. ARGUMENT

### A. Plaintiffs Adequately Allege Violations of §10(b) of The Exchange Act

#### 1. Applicable Pleading Standards Do Not Favor Dismissal

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff "need only allege enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 n.12 (2011).[2] On a 12(b)(6) motion, a court must accept all well-pled factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320–22 & n.4 (2007). At this stage, "the court's task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Nutriband, Inc. v. Kalmar*, 2020 WL 4059657, at *6 (E.D.N.Y. July 20, 2020).

[2] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added.

### 2. The Complaint Identifies Allegedly False and Misleading Statements with Particularity

Plaintiff's Complaint easily satisfies the particularity requirements of Rule 9(b) and the PSLRA. Under Rule 9(b), "a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). "The PSLRA's requirements are similar, stating that the complaint must specify the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.*[3]

#### a. Defendants' financial statements were false when made

The Complaint identifies each statement alleged to be misleading, who made the statement, when and where such statements were disseminated, and why Plaintiffs contend each is misleading. ¶¶78, 83, 86, 90, 92, 95, 101–102, 104, 108, 110, 112, 114–15, 117, 120, 122, 124, 127–28, 130, 133, 135, 137, 144, 146, 149. No more is required. *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *18–19 (E.D.N.Y. May 20, 2020). "In light of [Canopy']s admission that it must [and did] restate its financial statements, there can be no dispute that the [Complaint] pleads numerous false and misleading misstatements with respect to revenue, revenue related metrics, and [Canopy]'s compliance with GAAP." *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,

---

[3] Defendants' motion spends a page arguing that Lee cannot be held liable for the statements he made in Canopy's Q2 2022 Form 10-Q because he left Canopy soon after. DM 29–30. Conspicuously absent from Defendants' argument is any case law holding that a defendant is immune from liability because he left a company in the middle of its fraudulent acts. The Complaint outlines, and Plaintiffs' opposition shows, how Lee is liable for the misleading statements he made ***while at Canopy***. ¶¶83–87. Any suggestion that Plaintiffs seek to hold him liable for fraud committed after he left the Company is pure fantasy.

268 F. Supp. 3d 526, 544–45 (S.D.N.Y. 2017); *see also S.E.C. v. Espuelas*, 908 F. Supp. 2d 402, 410 n.5 (S.D.N.Y. 2012); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009). Because GAAP calls for restatement "only to correct material accounting errors that existed at the time the statements were originally issued," a restatement shows that the corrected financials were materially false. *See comScore*, 268 F. Supp. 3d at 544.

**b. Defendants' assurances about internal controls over financial reporting were false when made**

The Complaint similarly details how from 2021 through 2023, Defendants repeatedly affirmed to investors that Canopy's internal controls were effective and ensured accurate financial reporting. ¶¶85, 86, 94–95, 106–08, 119–20, 132–33, 148–49. In its May 10, 2023 Form 8-K and 2023 Form 10-K filed on June 22, 2023, Canopy admitted this was not true, and material weaknesses in its internal controls systems resulted in errors in previously issued financial statements ***since 2021***. ¶¶65–77, 151–56. "The law is clear that when a company states that its internal controls are effective and that assurance turns out to be wrong, ***the original statement is an actionable misleading statement***." *Solomon v. Sprint Corp.*, 2022 WL 889897, at *7 (S.D.N.Y. Mar. 25, 2022); *see also Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, at *6 (S.D.N.Y. Sept. 13, 2022); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720–21 (S.D.N.Y. 2019).[4] Thus, Canopy's admissions are sufficient to plead that Defendants' repeated assurances regarding the effectiveness of internal controls were materially false when made. *Id.; see also*, *e.g.*,

[4] *Accord In re Insys Therapeutics, Inc. Sec. Litig.*, 2018 WL 2943746, at *4 (S.D.N.Y. June 12, 2018); *Dobina v. Weatherford Int'l*, 909 F. Supp. 2d 228, 245–46 (S.D.N.Y. 2012); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020); *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 317 (S.D.N.Y. 2013) (collecting cases)*; In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 471 (S.D.N.Y. 2011) *on reconsideration*, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), *and on reconsideration*, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011); *Varghese*, 672 F. Supp. 2d at 606–07; *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 228–32 (S.D.N.Y. 2008).

¶¶85, 86, 94–95, 106-08, 119–20, 132–33, 148–49.[5]

Defendants incorrectly argue that their false SOX certifications are unactionable opinions. DM 17–18. Opinions are actionable, *inter alia*, where: (1) they embed false statements of fact; (2) they omit material adverse information that "conflict[s] with what a reasonable investor would take from the statement itself;" or (3) the opinions are not honestly held. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185–86, 188–89 (2015) (emphasis added). Even honestly held but irrational beliefs are actionable if they do not align with the information in a defendant's possession. *Id*. at 188–89. Here, there is no doubt that the SOX certifications contained false statements of fact, as they misrepresented the fulsomeness and accuracy of Canopy's financial statements and the effectiveness of its internal controls. ¶¶85, 86, 94–95, 106–08, 119–20, 132–33, 148–49. Moreover, Defendants had access to, *and received*, information contradicting their financial reporting. *Infra* at Section III(A)(3)(a).[6] Thus, even if opinions, the false SOX certifications would still be actionable. *See Plumbers & Pipefitters*, 2020 WL 1877821, at *12.

Defendants' argument that Canopy's admission of material weaknesses does not render their contradictory Class Period claims to investors misleading is equally fruitless. None of their cited cases actually support that position. In *Schiro v. Cemex, S.A.B. de C.V.*, plaintiffs alleged that

[5] Defendants argue that they cannot be held liable for failing to disclose inventory issues on February 9, 2023 because they already disclosed the write down (DM 15 n.9) but this ignores that Defendants failed to provide a *full* disclosure of the inventory issues and their impact on Defendants' false financial statements, and thus, Defendants' omissions are still actionable. *See Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 836–37 (S.D.N.Y. 2019), (holding defendants' partial disclosures were insufficient to inform a reasonable investor of the full scope of the problems and immunize defendants from liability).

[6] Defendants' access to and reception of contradictory information distinguishes this Action from Defendants' authority. See *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *30 (E.D.N.Y. Nov. 4, 2022) *report and recommendation adopted*, 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 812, 816 (S.D.N.Y. 2018).

defendants discovered a bribery scheme in 2017 which caused a breakdown in internal controls in 2012, and thus are liable for misleading statements about internal control effectiveness in 2014 through 2016. 396 F. Supp. 3d 283, 298–99, 306–07 (S.D.N.Y. 2019). The *Schiro* court held that, without allegations that management had reason to believe the statements were false when made, they were unactionable. *Id.* Conversely, Defendants *did* have reason to believe their internal controls statements were false when made, having both access to and actual reception of information about known problems at BioSteel that caused material weaknesses in Canopy's internal controls. ¶¶24–47, 165–68. Consequently, unlike in *Schiro*, Plaintiffs plead facts showing that any "conclusion" of effectiveness was either reckless or knowingly false when made. Thus, *Schiro* provides Defendants no reprieve.

**c. Defendants' statements about BioSteel were false when made**

Finally, the Complaint cogently pleads that Defendants made unbalanced and misleading statements about the Company's earnings and BioSteel's success because they concealed known defects undermining the accuracy of reported information. ¶¶78, 80–81, 90, 97, 101–02, 110, 112, 114–15, 117, 122, 124, 127–28, 130, 135, 137, 144, 146. Once Defendants chose to speak about BioSteel, they undertook "a duty to tell the whole truth," even if there was "no existing independent duty to disclose [such] information" in the first place. *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014); *see also Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002) (same); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 612 (S.D.N.Y. 2017) (same).[7] In particular, Defendants continually touted BioSteel while omitting that its revenues

[7] *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.* does not suggest, as Defendants argue, that they were free to conceal known inventory and distribution problems. Rather, in *Xerox*, this Court held that the issue had not yet ripened. 300 F. Supp. 3d 551, 576–77 (S.D.N.Y. 2018), *aff'd sub nom. Ark. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir.2019). Here, conversely,

were inflated, it lacked enforceable distribution contracts with many key distributors, and BioSteel was experiencing a massive problem with aged inventory. The wide divergence between these boastful claims and the actual status of BioSteel is classic evidence of falsity. *See Plumbers & Pipefitters*, 2020 WL 1877821, at *9 (statements touting a company's business strategy were misleading because they failed to disclose a buildup in inventory); *see also Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 485–86 (S.D.N.Y. 2014); *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *8–9 (S.D.N.Y. Sept. 30, 2020); *Nutriband, Inc.*, 2020 WL 4059657, at *8.

Defendants mistakenly argue that there is no nexus between Defendants' laudatory statements about BioSteel and the known inventory and distribution problems. DM 27–29. This makes no sense. The omissions all went to the central issue of whether BioSteel was succeeding as claimed, and Defendants now admit the issues were linked to revenue restatement. ¶¶78, 80–81, 90, 97, 101–02, 110, 112, 114–15, 117, 122, 124, 127–28, 130, 135, 137, 144, 146, 154–56.[8] And, even if some statements were literally true, "the law is well settled that so-called 'half-truths' … will support claims under the securities laws." *In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *15 (S.D.N.Y. Mar. 12, 2024) (collecting cases). By touting BioSteel's success while concealing known problems, Defendants omitted crucial information necessary to make the statements not misleading. *Vale*, 2020 WL 2610979, at *12–15.[9]

---

the Complaint adequately pleads Canopy's issues were fully ripened in late 2021, as evidenced by both the CWs' accounts and Canopy's false financial statements. ¶¶24–77.

[8] *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.* is inapposite. There, the risk of a predatory business model did not directly contradict claims of increased revenue. 859 F. Supp. 2d 572, 578–79 (S.D.N.Y. 2012). Here, that missing link is present. The known inventory and distribution problems directly undermined Defendants' claims about BioSteel's sales and inflated financial results, as the restatement concedes. ¶154.

[9] Defendants erroneously argue that the challenged statements do not tie to any issue with European markets, DM 28–29, but the Complaint makes clear that Canopy overstated revenue with products it attempted to dump in Europe, but failed due to lack of enforceable contracts. ¶¶29–33.

**d. Defendants' misrepresentations were material, not puffery**

Defendants incorrectly contend that certain of their misrepresentations were immunized as puffery. DM 26–27. Not so. In "deeming a statement puffery at the motion to dismiss stage, courts must exercise great caution, as "[t]he only circumstance in which a Court may deem a statement immaterial as a matter of law is when it is ***so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance***." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012). None of the statements here were obviously unimportant to investors.

Moreover, "[w]hile certain statements, viewed in isolation, may be mere puffery, when the statements are made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors, those statements may become material to investors." *Vale*, 2020 WL 2610979, at *12. Here, the context, nature and repetition of the misrepresentations confirm their significance to investors. They were tied to precise (though false) statements about BioSteel's past performance and distribution contracts, and the importance of BioSteel to overall revenue. *See* ¶78 ("Brand awareness continues to rise, velocity is tracking in-line with expectations and feedback from distributors and retailers has been positive … BioSteel sales in Q2 FY2022 increased 47% over Q2 FY2021 driven by the launch of RTD beverages and expanded distribution in the U.S. market"); ¶80 ("we're seeing really good retailer response to BioSteel."); ¶97 ("Canopy's hydration beverage brand, BioSteel, also delivered a record revenue quarter, driven by gains in distribution of BioSteel ready-to-drink."); ¶102 ("Increased distribution of BioSteel hydration products drove year-over-year revenue growth in FY2022 of 56% versus FY2021."); ¶110 ("BioSteel saw gains in distribution and sales velocity of the ready-to-drink products, which drove a 50% increase in revenue in fiscal '22 versus fiscal '21."). Such statements

identifying current, then-existing "specific sources of success" are not puffery. *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *16 (E.D.N.Y. Sept. 27, 2019).

Even if sections of the challenged statements contain "adjectives that may be vague in other circumstances," the key statements alleged "are sufficiently specific to survive a motion to dismiss given their context and clear inaccuracy." *Vale*, 2020 WL 2610979, at *10. All statements highlighted by Defendants were made in the context of, and were tethered to, false descriptions of BioSteel's financial success and all omitted the known, growing inventory crisis at BioSteel. ¶¶78, 80, 97, 102, 110. Indeed, characterizing specific aspects of the Company's business in positive terms when the contrary is true is not puffery. *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *2–3, 9; *Ark. Tchr. Ret. Sys.*, 18 F. Supp. 3d at 485. Further, statements like the ones made to investors about BioSteel in November 2021, made for the specific purpose of allaying direct concerns raised by investors and analysts, cannot constitute puffery. ¶80; *Henry Schein*, 2019 WL 8638851, at *16 (collecting cases).[10]

**3. The Complaint Alleges a Strong and Cogent Inference of Scienter**

Numerous facts alleged in the Complaint demonstrate that Defendants either knew of or recklessly disregarded the truth when making false and misleading statements to investors. "The scienter requirement can be satisfied by alleging facts … constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Henry Schein*, 2019 WL 8638851, at *17.

[10] Defendants' cited cases are all inapposite, as the statements there, unlike here, were untethered to historical factual statements. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 523–24 (S.D.N.Y. 2020) *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022); *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *13 (S.D.N.Y. Aug. 19, 2015) *report and recommendation adopted*, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015); *Shemian v. Rsch. In Motion Ltd.*, 2013 WL 1285779, at *23 (S.D.N.Y. Mar. 29, 2013) *aff'd*, 570 F. App'x 32 (2d Cir. 2014).

"The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences," but instead "only strong in light of other explanations[.]" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 451 (S.D.N.Y. 2019).

Omissions are reckless if defendants "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *see also Bear Stearns*, 763 F. Supp. 2d at 486. Courts must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323.

**a. Defendants' scienter is confirmed by confidential witnesses**

Defendants' scienter is established by the accounts of confidential witnesses, who not only confirmed that the distribution and inventory issues that ultimately caused Canopy's breakdown in internal controls over financial statements were prevalent and pervasive since 2021, and at least monthly, this information was provided *directly to* Defendants. ¶¶24–47, 75–77, 165–68; *see In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *36 (S.D.N.Y. July 31, 2023); *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 WL 249508, at *16 (S.D.N.Y. Jan. 20, 2015). Multiple CWs corroborate the well-known the existence of distribution issues and an aged inventory backlog at BioSteel since late 2021. ¶¶25–45. For example, CW2 CW5, and CW6 confirmed that BioSteel's inventory issues were known throughout the Company. ¶¶34–45. Additionally, CW1, CW2, CW3, and CW4 all affirmed that BioSteel had significant distribution issues caused, in large part, by the lack of enforceable contracts, and these issues skuttled many BioSteel sales. ¶¶25–33. Most significantly, according to CW5, Klein, Hong, and Lee all attended Monthly Business Review meetings where BioSteel's problems were discussed, including buildup of aging and unsellable

inventory. ¶44. This direct account shows that Klein, Hong, and Lee had knowledge of information undermining their misleadingly positive statements about BioSteel to investors. *See Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 300–01 (S.D.N.Y. 2018) (scienter established by internal meetings where facts were discussed contradicting public statements); *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 13–14 (2d Cir. 2011) (summary order) (scienter satisfied where defendants "received information about the inventory buildup" and "would have been alert to information concerning increases in the company's unsold inventory").

Defendants' attempt to discount this damning evidence fails. First, Defendants urge that certain CWs be disregarded even at the pleading stage because they did not report directly to Individual Defendants. DM 10–11. But, the "***notion that the CWs cannot be believed because none had direct contact with any individual Defendant is contrary to law***." *In re Avon Sec. Litig.*, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019). The actual test for crediting CWs is a "liberal standard" and does not require direct interaction. *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 132–34 (S.D.N.Y. 2020) (crediting account even though it was based on hearsay and indirect knowledge). A court must take a CW's statements as true at the pleading stage, so long as the CW was position to know the information attributed to them. *City of Omaha Police and Ret. Sys. v. Evoqua Water Tech Corp.*, 450 F. Supp. 3d 379, 405–08 (S.D.N.Y. 2020). Even CW accounts that may not be independently sufficient are credited in the Second Circuit when they corroborate other facts pled in the complaint. *See In re ForceField Energy Inc. Sec. Litig.*, 2017 WL 1319802, at *9 (S.D.N.Y. Mar. 29, 2017).

"Plaintiffs are not required to plead exact job titles, describe the sources' responsibilities and duties in detail or allege access to specific company documents." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 493 (S.D.N.Y. 2004). Nevertheless, the Complaint

*does* provide the CWs' roles, general responsibilities, and the time frame they worked at Canopy, which is more than sufficient. ¶¶26, 28, 30, 32, 35; *Lematta v. Casper Sleep, Inc.*, 2022 WL 4637795, at *14 (E.D.N.Y. Sept. 30, 2022) (finding such details to support the probability that the CWs possessed the information alleged). At most, Defendants "have raised a factual dispute about whether the confidential witnesses possessed information about [BioSteel], which would be inappropriate to resolve at this juncture." *Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, 2023 WL 8287681, at *11 (S.D.N.Y. Nov. 30, 2023).

The Complaint's allegations stand in stark contrast to those from Defendants' cited cases. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 802–04 (S.D.N.Y. 2020) (holding the descriptions of confidential witnesses insufficient because, unlike here, they failed to provide the witnesses' job titles, responsibilities, and dates of employment); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594–95 (S.D.N.Y. 2011) (holding CW accounts were insufficient because, unlike here, they do not provide the CWs' job responsibilities or how they were privy to their information).[11] By contrast, the allegations here provide such details. ¶¶26, 28, 30, 32, 35, 41.

Next, Defendants attempt to distort CW5's account as purely hypothetical. It was not. As

[11] Defendants' assertion that CW5's allegations should be discounted because CW5 started in 2019 and the Complaint does not allege that CW5 had any contact with Defendants during the Class Period blatantly misrepresents Complaint allegations, which must be accepted as plead. DM 10, n.5. CW5 stated that the excess inventory problem began in late 2021 (¶36), that the issue ***was discussed with Defendants on Canopy's Monthly Business Calls*** (¶44) long before CW5 left Canopy in April 2022 (¶35). Thus, CW5 unquestionably demonstrates that concealed information was actually conveyed to Defendants between late 2021 and April 2022, which is sufficient to establish scienter. *See New Orleans Emps. Ret. Sys.* 455 F. App'x at 13–14 (finding near identical allegations of knowledge through monthly business meetings to be sufficient to establish scienter); *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *23–24 (similar). Defendants' reliance on *In re Elan Corp. Sec. Litig.*, is mistaken because unlike here, that case lacked any allegation that defendants had access to or received contradictory information before the misleading statements. 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008).

alleged, CW5 expressly affirmed ***actual*** discussions including that "Canopy conducted Monthly Business Review calls ***in which the excess inventory problem was discussed***." ¶44. This first-hand account is alone sufficient to establish scienter. *See In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *23–24. Consequently, Defendants' cited authority is inapplicable here.[12]

Defendants also baselessly assert that excess inventory was unrelated to their statements to investors. DM 14–15. But the Complaint outlines how the excess inventory and distribution issues were known problems that directly undermined Defendants' laudatory statements about BioSteel. ¶¶25–77. Further, Defendants' 2023 Form 10-K admitted that the misleading financial disclosures were caused by revenue falsely recognized in violation of GAAP, largely because of attempts to offload growing excess and obsolete inventory that were rejected by customers and distributors. ¶¶154–55. *Horowitz,* 2013 WL 1149670, at *6, 10, provides no cover for Defendants' deception. There, the court drew a distinction between general allegations regarding inventory management and specific allegations that defendants knew of overproduction and inventory build-up, like is the case here. Instead, this Action is more like *New Orleans Emps. Ret. Sys.,* where, as here, the defendants were informed of excess and obsolete inventory, at odds with defendants' statements about financial performance. 455 F. App'x at 13–15. Such allegation is sufficient to establish

---

[12] *See Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780–81 (S.D.N.Y. 2021) (plaintiffs did not plead specific access to contradictory information); *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *27–28 (S.D.N.Y. Apr. 2, 2020) (unlike here, plaintiffs failed to allege what contradictory information was shared); *Chapman v. Mueller Water Prod. Inc.*, 466 F. Supp. 3d 382, 400 (S.D.N.Y. 2020) (CWs were not at quarterly meeting with defendants); *Schiro*, 396 F. Supp. 3d at 304–06 (CWs did not know if defendants were exposed to contradictory information); *Horowitz v. Green Mountain Coffee Roasters, Inc.*, 2013 WL 1149670, at *6–7 (D. Vt. Mar. 20, 2013) (plaintiffs failed to allege defendants received specific adverse information); *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) *aff'd sub nom. Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir. 2011) (not alleged defendants actually received contradictory information).

scienter. *Id.*

Nor are the CWs accounts insufficiently specific because they described the inventory problem in qualitative terms (so bad that caseloads or even truckloads were given away to employees, *e.g.*, ¶¶40,43) rather than quantitatively. DM 12–16. "At this early stage of litigation, and even with the heightened pleading standards of Rule 9(b) and the PSLRA, the Court does not require the pleading of detailed evidentiary matter[s] in securities litigation." *Galestan*, 348 F. Supp. 3d at 302. As *Galestan* instructs, plaintiffs generally need not "quantify the scope, magnitude, or duration of" problems. *Id*. Such quantification is necessary only where a complaint alleges problems were misquantified, rather than where, as here, it alleges that problems were concealed altogether. *Id*. at 298–300, 302.

"Considered collectively with the other allegations in the complaint, the CWs' allegations that [Canopy] presented baseless [financial reports], and intentionally concealed its shortcomings from the investing public, add to the circumstantial evidence of recklessness on the defendants' part." *Fairway*, 2015 WL 249508, at *16.

**b. Defendants' access to contradictory information**

Defendants' access to information directly contradicting their public statements likewise establishes scienter. "Where the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001); *see also In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *10–11 (E.D.N.Y. Dec. 5, 2013). Klein, Hong, and Lee oversaw Canopy's operations, including BioSteel, financial reporting, and internal controls. ¶¶9–12, 165–68, 190–91. By conducting these functions, Klein, Hong, and Lee

would necessarily know of the false and inflated accounting to investors, the weakness in Canopy's internal controls, and the problems at BioSteel, including its aged inventory and distribution issues. *See In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9; *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 233–34 (S.D.N.Y. 2023). Having pled detailed bases for access to contradictory reports, plaintiffs need not outline each report that was delivered to Defendants. *See, e.g.*, *World Wrestling Ent. Inc.*, 477 F. Supp. 3d at 136 (finding that plaintiff alleging "access to contrary facts" adequately pleaded scienter, even though complaint did not specify relevant "reports or statements"); *Wang*, 661 F. Supp. 3d at 233–34 (same). Nevertheless, Plaintiffs *do* identify specific contradictory information that was delivered to Defendants (¶44).[13]

**c. Defendants held themselves out as knowledgeable about misrepresented information**

Courts in the Second Circuit consistently find scienter where defendants "made public representations suggesting familiarity" with the subjects misrepresented. *Vale*, 2020 WL 2610979, at *17; *see also Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326–27 (S.D.N.Y. 2018) (finding scienter where defendants were "regularly quoted on behalf of" the company discussing the misrepresented issues). "Actively communicating with the public about [these issues] demonstrates defendants' sensitivity to it." *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016); *see also Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 133–34 (D. Conn. 2021).

[13] Defendants' cited authority is distinguishable. In *Malin v. XL Cap. Ltd.*, the court found no scienter because plaintiffs attempted to impute the accounting improprieties of a subsidiary onto a parent company. 499 F. Supp. 2d 117, 163–64 (D. Conn. 2007). Here, conversely, because Canopy conducted the accounting for BioSteel (¶¶190–91), any accounting improprieties are those *of Canopy* and not a subsidiary. Defendants' other authority is out-of-circuit applying non-controlling precedent, and unlike here, does not have allegations that Defendants were aware of contradictory information. *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 894 (W.D. Tex. 2008); *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at *19 (D.N.J. July 2, 2019).

Here, Klein, Lee, and Hong repeatedly held themselves out as extremely knowledgeable about BioSteel, its revenues, and the financial statements that would later need to be revised due to the internal controls failures at the Company. ¶¶173–77. That they held themselves out as having such knowledge is strong circumstantial evidence of scienter. *See City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 198–99 (S.D.N.Y. 2010) (collecting cases). Defendants' reliance on *In re Nokia Corp. Sec. Litig.* is misplaced, as *Nokia* involved "public statements [that] were consistent with its reasonably available data at the time." 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006). Here, contradictory information was not only available at the time of the misleading statements, but was directly conveyed to Defendants. *Supra* at Section III(A)(3)(a).

Also bolstering Defendants' scienter is the great disparity between Canopy's assurances to investors and the actual state of affairs. ¶¶185–89. When a defendant makes a statement about an aspect of a company's business that is "at odds with the company's actual condition" or practices, there is a strong inference of scienter. *New Orleans Emps. Ret. Sys.*, 455 F. App'x at 13; *see also Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 170–71 (D. Conn. 2019) (collecting cases) (holding that plaintiffs pled strong circumstantial evidence of recklessness when defendants made public statements that were at odds with reality). Contrary to Defendants' positive statements about the effectiveness of Canopy's internal controls, Canopy's accounting was replete with material weaknesses and produced wildly inflated revenue numbers. ¶¶186–89. Further, BioSteel was not the strong, record-setting subsidiary that Defendants portrayed, but rather a faltering company without enforceable contracts, with an ever-growing backlog of unsellable product, built on false revenue numbers. ¶¶78–151.

**d. The scale and timing of Defendants' fraud and disclosures bolster scienter**

Defendants began to disclose the massive write down of BioSteel's aged inventory only three months after they touted BioSteel as successful and "seeing strong growth[.]" ¶¶127–41. Further, Defendants subsequently disclosed that the BioSteel revenues were inaccurate and their internal controls were replete with material weaknesses only three months after Defendants promoted BioSteel's revenue and affirmed that Canopy's internal controls were effective. ¶¶144–51. This sudden reversal of fortune, along with the size and scale of the newly disclosed problems at BioSteel, all "add further strength to the strong circumstantial evidence of scienter." *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *16–17 (S.D.N.Y. Aug. 11, 2021) (collecting cases); *see also Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (collecting cases); *Bear Stearns*, 763 F. Supp. 2d at 517. Similarly, the magnitude of the backlog of BioSteel product and the eventual write-down of BioSteel's aged inventory provides similar evidence that these problems were known to Defendants well before they were disclosed to investors. *See, e.g. In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) (collecting cases); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 327 (S.D.N.Y. 2001). The sheer scale of Canopy's material weaknesses, and the 15-point plan needed to remediate those weaknesses, lend further support to Defendants' scienter. *See Insys*, 2018 WL 2943746, at *6–7 ("Insys and its officers failed to maintain sufficient internal controls to avoid fraud[, which is] sufficiently indicative of scienter."); *Hall*, 580 F. Supp. 2d at 228–32 (similar); *In re Veeco Instruments, Inc. Sec. Litig.,* 235 F.R.D. 220, 232 (S.D.N.Y.2006) (similar); *Oxford*

*Health Plans, Inc. Sec. Litig.,* 51 F. Supp. 2d 290, 295–96 (S.D.N.Y.1999) (similar).[14] Moreover, even if Defendants' rampant GAAP violations do not *alone* establish scienter, they certainly bolster a holistic inference of scienter. *See Varghese*, 672 F. Supp. 2d at 608.

Defendants' authority in opposition is distinguishable, as it simply holds that restatement magnitude and GAAP violations *alone* cannot establish scienter, which Plaintiffs are not arguing. *See In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *17–18; *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 545–46 (S.D.N.Y. Oct. 24, 2017); *Turquoise Hill*, 2014 WL 7176187, at *7; *City of Omaha Civilian Emp.'s Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009).

**e. That the misrepresentations involved core operations bolsters scienter**

"Under the core operations theory, a court may infer that a company and its senior executives have knowledge of information concerning the core operations of a business, such as events affecting a significant source of revenue." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 174 (S.D.N.Y. 2021). "[A]llegations of a company's core operations … can provide supplemental support for allegations of scienter, even if they cannot establish scienter independently." *New Orleans Emps. Ret. Sys.*, 455 F. App'x at 14 n.3; *see also*

[14] Defendants' citation of cases where executives did not have reason to know of issues impacting internal controls lacks merit. *See Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 239 (S.D.N.Y. 2020); *Schiro*, 396 F. Supp. 3d at 306–07; *Thomas v. Shiloh Indus.*, Inc., 2018 WL 4500867, at *6 (S.D.N.Y. Sept. 19, 2018); *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *17–18 (S.D.N.Y. Oct. 25, 2017); *Pearlstein v. Blackberry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016), and *on reconsideration*, 2017 WL 4082306 (S.D.N.Y. Sept. 13, 2017); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *8 (S.D.N.Y. Dec. 16, 2014); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008). Here, Defendants *did* have reason to know of issues at Canopy, having been warned of problems that ultimately caused those failures. ¶44.

*Fairway*, 2015 WL 249508, at *15 (same); *Freudenberg*, 712 F. Supp. 2d at 201 (same).[15] Here, the misrepresented material concerned, as analysts noted throughout the Class Period, the driving factor behind Canopy's revenue. ¶¶178–81. It would be absurd to suggest that Defendants were unaware of the actual state of these operations. *See In re Avon Sec. Litig.*, 2019 WL 6115349, at *20 (holding that, it would be "absurd to suggest that [the company's] senior management was unaware" of problems in a segment accounting for 21% of revenue).

**f. Defendants' concealing the material weaknesses with false SOX certifications bolsters scienter**

Klein, Hong, and Lee signed Canopy's SEC filings and SOX certifications, demonstrating that they either had familiarized themselves with or recklessly ignored the underlying facts. ¶¶86, 95, 198, 120, 133, 149; *In re Pall Corp.*, 2009 WL 3111777, at *7–8 (E.D.N.Y. Sept. 21, 2009). These allegations, even if not independently sufficient, can contribute to a finding of scienter. *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 468 (S.D.N.Y. 2017); *Plumbers & Pipefitters*, 2020 WL 1877821, at *14; *In re Avon Sec. Litig.*, 2019 WL 6115349, at *20; *Symbol Techs.*, 2013 WL 6330665, at *10. "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements." *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189–90 (C.D. Cal. 2007).

Defendants' cases regarding SOX certifications, unlike here, did not involve allegation that

---

[15] Defendants argue that the core operations doctrine is no longer valid, DM 20, "[b]ut the Second Circuit has yet to abrogate the rule … [and] most courts in this jurisdiction addressing the inference following the passage of the PSLRA have concluded that allegations of a company's core operations … can provide supplemental support for allegations of scienter." *In re Avon Sec. Litig.*, 2019 WL 6115349, at *20. Recognizing that this argument is unavailing, Defendants next argue that core operations alone does not establish scienter, but because Plaintiffs are arguing that the core operations doctrine bolsters an already strong inference of scienter, Defendants' authority hold no sway here. *See Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *31–32 (S.D.N.Y. Oct. 10, 2018); *Turquoise Hill*, 2014 WL 7176187, at *8; *Shemian*, 2013 WL 1285779, at *18.

defendants had access to contradictory information at the time of the misstatements. *Woolgar*, 477 F. Supp. 3d at 238–39; *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018); *Int'l Ass'n of Heat v. IBM*, 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016).

**g. Suspicious departures bolster an inference of scienter**

Defendant Lee's resignation, suspiciously-timed right after the fraud began, helps contribute to an overall pleading of scienter. ¶192; *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (collecting cases). This is equally true for the ouster of BioSteel co-founder and CEO, John Celenza, who left the Company only a few weeks after it was disclosed that BioSteel's aged inventory would have to be written off and two months before the Company disclosed that it had been misrepresenting BioSteel's revenue for years. ¶193; *In re Mercator Software, Inc.,* 161 F. Supp. 2d 143, 150 (D.Conn.2001); *cf Malin*, 499 F. Supp. 2d at 163 (holding executive departures did not support scienter because they were not coupled with a restatement).[16]

**h. Defendants fail to proffer a plausible competing inference**

Defendants offer no plausible competing inference that could excuse their reckless misrepresentations and omissions. DM 24–25. By late 2021, Defendants knew of inventory and distribution risks to Canopy's driving force for revenue that directly impacted Canopy's internal controls over financial reporting but continued to mislead investors until the risks fully manifested and they could no longer hide the full scope of their impact. ¶¶44, 165–68. And, unlike in the cases cited by Defendants, the Complaint provides numerous CWs who confirm with specificity that Defendants had access to, and according to CW5 were at least monthly directly provided with,

[16] Contrary to Defendants' motion, DM 23, that Celenza is not a party to this litigation does not negate the inference of scienter his resignation adds. *See, e.g.*, *In re Scot. Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) (holding that the resignation of a non-party executive "add[ed] to the overall pleading of circumstantial evidence of fraud"); *In re Mercator Software, Inc.,* 161 F. Supp. 2d at 150 (same).

information contradicting their public statements. Thus, Defendants here did not take "steps to diligently investigate and correct misstatements as soon as they became aware of them." *See Hain*, 2022 WL 18859055, at *28–29; *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *18; *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, 2014 WL 4832321, at *32 (S.D.N.Y. Sept. 29, 2014).

**i. Defendants' remaining scienter arguments fail**

Defendants' "fraud by hindsight" argument is inapplicable here. DM 8–9, 15, 20. "The incantation of fraud-by-hindsight will not defeat an allegation of misrepresentations and omissions that were misleading and false at the time they were made." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 476 (S.D.N.Y. 2012). The Complaint alleges facts plausibly demonstrating that the statements were misleading and false *at the time they were made*. ¶¶24–150. That is not "fraud-by-hindsight." *Freudenberg*, 712 F. Supp. 2d at 191–92. Nor does the fact that the risks known at the time of the statements were only later admitted "make this a fraud-by-hindsight case." *See Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *7 (S.D.N.Y. June 21, 2021). That is simply not what the term means. *Id.* Defendants' admissions of these material weaknesses in Canopy's internal controls in May and June 2023 also provide evidence that these statements were false when made. ¶¶153–56; *supra* at Section III(A)(2)(b). "Contrary to Defendants' argument, this is not an allegation of 'fraud by hindsight,' but rather an admission by [Defendants] that earlier statements were false when made." *Venkataraman*, 2022 WL 4225562, at *6.[17]

Defendants also attempt to cleave off the scienter allegations relating to BioSteel's backlog

---

[17] *In re Plug Power, Inc. Sec. Litig.* is distinguishable. There, the court held that the allegations were fraud-by-hindsight because (i) there was no evidence of contradictory information at the time the statements were made; (ii) there was no duty to disclose the omitted information; and (iii) the restatement did not have an impact on income. 2022 WL 4631892, at *17 (S.D.N.Y. Sept. 29, 2022). Here, all three of those factors are present. *Supra* at Section II(B), Section III(A)(2)(c), Section III(A)(3)(b).

of inventory from the allegations related to distribution issues, internal controls, and inflated financial reporting. DM 12–16. This ignores well-pled allegations, and at most creates a factual issue for the trier of fact. The Complaint details how the backlog of inventory was exacerbated by failure to secure enforceable distribution contracts, and how both problems ultimately led to false financial reporting, exposing material weaknesses in internal controls. ¶¶25–77, 151, 154–55. Canopy's own 2023 10-K admits as much. It identifies distribution issues and obsolete inventory as the cause of its breakdown in internal controls and false financial reporting. ¶¶154–55. "That Defendant[s] failed to predict how [the risks] actually materialized is immaterial to the scienter issue." *In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, 2021 WL 4481215, at *31 (S.D.N.Y. Sept. 30, 2021) (collecting cases).

**4. The Complaint Adequately Alleges Violations of §20(a) of the Exchange Act**

Because the Complaint sufficiently pleads claims under Section 10(b) of the Exchange Act, claims for control person liability should be sustained. *See, e.g., In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *30 (S.D.N.Y. Sept. 30, 2021).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in full.

Dated: March 28, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*

Joshua B. Silverman (admitted *pro hac vice*)
Christopher P.T. Tourek (admitted *pro hac vice*)
10 South LaSalle Street, Suite 350
Chicago, Illinois 60603
Tel: (312) 377-1181
Fax: (312) 229-8811

jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Counsel for Lead Plaintiff Chen Li and Additional Named Plaintiffs and Lead Counsel for the Class*

**HAO LAW FIRM**
Junbo Hao
Room 3-401 No. 2 Building
No. 1 Shuangliubei Street
100024 Beijing People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Chen Li*

**BRONSTEIN, GEWIRTZ, & GROSSMAN, LLC**
Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com
eitan@bgandg.com

*Additional Counsel for Christiann Kantner*

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

**ROBBINS LLP**
Brian J. Robbins
Stephen J. Oddo
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Email: brobbins@robbinsllp.com
soddo@robbinsllp.com

*Additional Counsel for Thinh Nguyen*

**CERTIFICATE OF SERVICE**

On March 28, 2024, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

**POMERANTZ LLP**
By: */s/ Christopher P.T. Tourek*
Christopher P.T. Tourek